IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL SALCIDO,<br><br>    Petitioner,<br><br>vs.<br><br>MIKE MARTEL,<br><br>    Respondent.<br>_____/ | No. CIV S-08-1025-MCE-TJB<br><br><br><br><br>FINDINGS AND RECOMMENDATIONS |

## I. INTRODUCTION

Petitioner Paul Salcido is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the following reasons, it is recommended that the petition be denied.

## II. BACKGROUND

Petitioner is currently serving a 103 years-to-life sentence for murder, conspiracy to commit murder, and attempted murder. Resp't's Answer Ex. 1, pt. 1, at 3, ECF No. 7. He is in the custody of the California Department of Corrections and Rehabilitation, following his 1999 conviction by jury in the Monterey County Superior Court. *Id.*

With this petition, Petitioner does not challenge his underlying conviction and sentence. Rather, he challenges a prison disciplinary hearing held on February 9, 2006, "in which he was

1

convicted of possessing inmate-manufactured alcohol." Resp't's Answer Ex. 1, pt. 2, at 12, 79. He was assessed: (1) a credit forfeiture of 120 days; (2) a suspension of canteen privileges for 90 days, effective from the hearing date to May 9, 2006; (3) a loss of yard/phone privileges for 90 days, effective from the hearing date to May 9, 2006; and (4) a confinement to his quarters for five weekends, for a total of ten days. *Id.* at 14. The confinement was to be served on the following weekends: (1) February 11, 2006 to February 12, 2006; (2) February 18, 2006 to February 19, 2006; (3) February 25, 2006 to February 26, 2006; (4) March 4, 2006 to March 5, 2006; and (5) March 11, 2006 to March 12, 2006. *Id.*

Petitioner pursued his administrative appeals. On April 6, 2006, his administrative appeal was denied at the second level. *See* Resp't's Answer Ex. 1, pt. 1, at 44-46. On July 12, 2006, his final administrative appeal was denied at the director's level. *See id.* at 48-49.

Petitioner then filed a habeas petition in the Amador County Superior Court on November 3, 2006. *See id.* at 2. On May 22, 2007, the Superior Court issued a reasoned opinion denying the petition. *See* Resp't's Answer Ex. 1, pt. 2, at 79-82. Petitioner sought relief in the California Court of Appeal, Third Appellate District, and the California Supreme Court; those petitions were likewise denied, but without written opinions. *See* Resp't's Answer Exs. 2-7.

On May 12, 2008, Petitioner filed the instant federal habeas petition. Respondent filed an answer to the petition on August 11, 2008. On November 12, 2008, the Honorable Edmund F. Brennan issued an order granting Petitioner's request for an extension of time to file and serve a reply to the answer. *See* Order, Nov. 12, 2008, ECF No. 13. Pursuant to the order, Petitioner had 30 days from the date the order was served to file and serve a reply. *See id.* Petitioner did not file a reply.

### III. APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v.*

*Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)). This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359, 362 (9th Cir. 1999). Under AEDPA, federal habeas corpus relief also is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

In applying AEDPA's standards, the federal court must "identify the state court decision that is appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). Where more than one state court has adjudicated a petitioner's claims, a federal habeas court analyzes the last reasoned decision. *Id.* (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) (finding presumption that later unexplained orders, upholding judgment or rejecting same claim, rests upon same ground as prior order)). Thus, a federal habeas court looks through ambiguous or unexplained state court decisions to the last reasoned decision to determine whether that decision was contrary to or an unreasonable application of clearly established federal law. *Bailey v. Rae,* 339 F.3d 1107, 1112-13 (9th Cir. 2003). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable-a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

///

///

3

IV.  CLAIMS FOR REVIEW

The petition for writ of habeas corpus sets forth three grounds for relief, all of which Petitioner claims violate his due process rights.  First, Petitioner asserts that the disciplinary finding was not based on sufficient evidence. Pet'r's Pet. 4, ECF No. 1.  Second, Petitioner alleges that the Senior Hearing Officer ("SHO") was biased because he found Petitioner guilty. *Id.*  Third, Petitioner contends that Title 15, Section 3016(a) of the California Code of Regulations is unconstitutionally vague. *Id.* at 5.

A. Ground One: "Some Evidence" Claim

First, Petitioner argues that "[t]here was no evidence presented at the disciplinary hearing upon which a finding of guilt could be based," thereby violating his due process rights. *Id.* at 4. Petitioner asserts that his "cellmate brought the alcohol into the cell after petitioner reported to his education class." *Id.* Petitioner's cellmate "testified at the disciplinary hearing that the alcohol was his, and petitioner had no knowledge of it." *Id.* Petitioner affirms that he "had no knowledge of the presence of alcohol," but nevertheless was found guilty. *Id.*

1. Legal Standard for Due Process and "Some Evidence" Claim

Prisoners cannot be entirely deprived of their constitutional rights, but their rights may be diminished by the needs and objectives of the institutional environment. *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974).  Prison disciplinary proceedings are not part of a criminal prosecution, so a prisoner is not afforded the full panoply of rights in such proceedings. *Id.* at 556. Thus, a prisoner's due process rights are moderated by the "legitimate institutional needs" of a prison. *Bostic v. Carlson*, 884 F.2d 1267, 1269 (9th Cir. 1989) (citing *Superintendent, Mass. Corr. Inst. at Walpole v. Hill*, 472 U.S. 445, 454-455 (1984)).

When a prison disciplinary proceeding may result in the loss of good time credits, due process requires that the prisoner receive:  (1) advance written notice of at least 24 hours of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a

4

written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. *Hill*, 472 U.S. at 454; *Wolff*, 418 U.S. at 563-67. In addition, due process requires that the decision be supported by "some evidence." *Hill*, 472 U.S. at 455 (citing *United States ex rel. Vajtauer v. Comm'r of Immigration*, 273 U.S. 103, 106 (1927)). The "some evidence" standard is not particularly stringent and is satisfied where "there is any evidence in the record that could support the conclusion reached." *Id.* at 455-56. A violation of prison regulations does not give rise to a due process claim as long as these minimum protections have been provided. *See Walker v. Sumner*, 14 F.3d 1415, 1419-20 (9th Cir. 1994).

### 2. State Court Decision

Here, because the California Supreme Court and California Court of Appeal summarily denied Petitioner's claims, the state court decision appropriate for review is the Superior Court's decision. Under AEDPA's standards, the Superior Court reasonably held that "[t]here is some evidence in the record that the petitioner committed the charged offense." Resp't's Answer Ex. 2, pt. 1, at 80. In *In re Zepeda*, 141 Cal. App. 4th 1493, 47 Cal. Rptr. 3d 172 (2006), which was cited by the Superior Court, the California Court of Appeal considered a similar situation. In that case, the inmate was found guilty of a disciplinary violation because contraband was found in his cell. *See In re Zepeda*, 141 Cal. App. 4th 1493, 1499, 47 Cal. Rptr. 3d 172 (2006). The *Zepeda* court summarized the evidence against the inmate as follows:

> The primary evidence against [the inmate] was the location of the razor blades—in a "paper medicine cup on top of [a] cement shel[f]" in "an area easily accessible to both inmates." [The inmate] was one of only two inmates who shared the cell, and "had been in the cell for several days prior to the discovery of the razor blades." In addition, the plastic casings for the razor blades were found in the cell, indicating that alteration of the razor blades occurred there.

*Id.* "At the hearing, the evidence regarding the discovery of the razor blades was presented, as well as [the cellmate's] claim of ownership of the cup and razor blades." *Id.* at 1495, 47 Cal. Rptr. 3d 172. "[The inmate] denied having any knowledge of them." *Id.*

5

1    Discussing the "some evidence" standard under *Hill*, the *Zepeda* court noted that "this
2 evidence would likely be insufficient to form the basis of a criminal conviction because . . . the
3 prison officials 'never negated the possibility' that the razor blades were in the cell without [the
4 inmate's] knowledge." *Id.* at 1499, 47 Cal. Rptr. 3d 172 (quoting *Goodlow v. Superior Court*,
5 101 Cal. App. 3d 969, 975, 162 Cal. Rptr. 121 (1980)). The *Zepeda* court recognized that, under
6 *Hill*, "to withstand court scrutiny for federal due process purposes, there is simply no requirement
7 that the evidence 'logically preclude any conclusion but the one reached by the disciplinary
8 [official].'" *Id.* (quoting *Hill*, 472 U.S. at 456).

9    In this case, the Superior Court properly applied the "some evidence" standard under *Hill*
10 in concluding that "there is some evidence in the record that the petitioner committed the charged
11 offense." Resp't's Answer Ex. 2, pt. 1, at 80. On January 23, 2006, at approximately 9:30 a.m.,
12 "A5-Floor Officer" A. Montanez "detected a strong odor coming from cell #235" while
13 conducting the morning yard release. Resp't's Answer Ex. 1, pt. 2, at 12. "After the completion
14 of yard release," he "conducted a cell search of A5-235, occupied by Inmates Ermitano" and
15 Petitioner. *Id.* He discovered several items "consistent with the making of [i]nmate
16 [m]anufactured [a]lcohol" (pruno), including: (1) a blue tupper ware container with "KICKER;"
17 (2) a water bottle full of pruno; (3) a half full container of jelly; (4) a coffee container half full of
18 pruno; (5) a tumbler full of pruno; (6) two empty containers of jelly; (7) four apples; (8) a white
19 bucket; and (9) a clear plastic bag full of pruno, "approximately [1] gallon." *Id.* Sergeant R.
20 Carillo verified that the substance was pruno "in a state of fermentation." *Id.*

21   At the prison disciplinary hearing held on February 9, 2006, Petitioner requested that two
22 witnesses testify: (1) Officer Montanez; and (2) Inmate Ermitano, Petitioner's cellmate. First,
23 Officer Montanez answered that he did not recall whether Petitioner was in the building when he
24 searched the cell. *Id.* at 13. Officer Montanez added that Inmate Ermitano did not tell him the
25 alcohol was his, and Inmate Ermitano "was the only inmate" he saw "in the cell prior to
26 searching it." *Id.* Second, Inmate Ermitano testified, "It [the wine] was mine." *Id.* Inmate

6

Ermitano alleged that Petitioner had no knowledge of the pruno. *Id.* Inmate Ermitano also asserted that he brought the pruno into the cell when "the officer popped the door for school and work release, about 0730 to 0745 hours." *Id.* As well, Petitioner testified, "That morning I was at school all day. There was none of that stuff inside of the cell when I left to go to school that morning." *Id.* at 14.

The SHO found Petitioner guilty of "possession or manufacture of alcohol in an institution." *Id.* The "alcohol and inmate manufactured alcohol paraphernalia w[ere] in an area of the cell that both inmates had access; therefore, both inmates shared possession of the contraband and are equally responsible." *Id.* Additionally, "[t]his amount of inmate manufactured alcohol would exceed the amount for personal use by one inmate in a prison setting." *Id.* at 15. Finally, Officer Montanez could "smell the inmate manufactured alcohol emitting from the cell prior to the cell door being opened; therefore, a reasonable person would have known the inmate-manufactured alcohol was in the cell." *Id.*

The Superior Court, therefore, properly found that "[t]his case is directly analogous to the situation in Zepeda, supra." *Id.* at 80. Based on the pruno's strong odor, knowledge of the alcohol's presence in the cell may be reasonably imputed to Petitioner. *See Toussaint v. McCarthy*, 801 F.2d 1080, 1105 (9th Cir. 1986) (finding federal habeas courts reviewing state actions do not disturb credibility determinations). Inmate Ermitano's claim of responsibility for the pruno does not suggest that the finding was inappropriate given the nature of a penal institution and the various reasons why one inmate might attempt to accept the blame for another one. *See id.* Thus, the pruno's undisputed presence in Petitioner's cell and the circumstances of its discovery provide the requisite "some evidence" for the SHO's rejection of Petitioner's ignorance defense, *Hill*, 472 U.S. at 455, and the factual determination is objectively reasonable.

B. Ground Two: Partial and Biased Hearing Officer

Second, Petitioner argues that the "disciplinary hearing officer was not an impartial fact-finder," thereby violating his due process rights. Pet'r's Pet. 4. Petitioner reasons that the SHO

1 was biased because the SHO found "both petitioner and his cellmate guilty" even though
2 Petitioner's cellmate testified that "Petitioner was not present when he brought the alcohol in the
3 cell, nor had any knowledge of its presence." *Id.*

4   A hearing conducted by a biased hearing officer may indeed violate a prisoner's due
5 process rights. *Wolff*, 418 U.S. at 571. To support a claim of bias, a petitioner must demonstrate
6 actual bias or the appearance of bias. *See Taylor v. Hayes*, 418 U.S. 488, 501 (1974). Bias
7 cannot be shown from an adverse ruling in a pending case: the alleged bias must be from an
8 extrajudicial source. *Larson v. Palmateer*, 515 F.3d 1057, 1067 (9th Cir. 2008).

9   Here, the Superior Court properly held that "Petitioner has failed to bring forth any
10 evidence of actual bias on the part of the hearing officer." Resp't's Answer Ex. 1, pt. 2, at 81.
11 Petitioner presents no evidence that the SHO was biased aside from Petitioner's own subjective
12 belief. Rather, Petitioner's sole support is that the SHO ruled against Petitioner, despite his
13 cellmate's testimony claiming possession and Petitioner's lack of knowledge of the pruno.
14 Without any other evidence, this does not give rise to an objective appearance of bias.
15 Accordingly, this claim is without merit.

16   C. Ground Three: Vagueness

17   Third, Petitioner alleges that Title 15, Section 3016(a) of the California Code of
18 Regulations is unconstitutionally "vague as applied" to him. Pet'r's Pet. 5 (internal quotation
19 marks omitted). Section 3016(a) provides:

> Inmates shall not inhale, ingest, inject, or otherwise introduce into their body; use, possess, manufacture, or have under their control any controlled substance, medication, or alcohol, except as specifically authorized by the institution's/facility's health care staff.

23 CAL. CODE REGS. tit. 15, § 3016(a). Petitioner argues that section 3016(a) fails to put him "on
24 notice that he could be found guilty of possession of alcohol found in possession of his cellmate,
25 while petitioner is not present in the cell, had no knowledge of its presence, and his cellmate
26 admitted ownership of the alcohol" and testified to the same. Pet'r's Pet. 5.

8

1    "It is a basic principle of due process that an enactment is void for vagueness if its
2    prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  A
3    government regulation may be unconstitutionally vague for two reasons:  (1) a "reasonable
4    person of ordinary intelligence" would not understand what conduct the statute prohibits,
5    *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1493 (9th Cir. 1996); or (2) the
6    statute may permit or authorize "arbitrary and discriminatory enforcement."  *See G.K. Ltd. Travel*
7    *v. City of Lake Oswego*, 436 F.3d 1064, 1084 (9th Cir. 2006).  The first question to be answered
8    for a vagueness challenge is whether the challenge is to the face of the statute or regulation, or
9    whether the challenge is directed to application of the law in the particular case.  *Schwarzmiller*
10   *v. Gardner*, 752 F.2d 1341, 1346 (9th Cir. 1984).  "Where speech is not the explicit subject of a
11   statute or regulation and is not otherwise implicated in the case, and if related constitutional
12   rights are not expressly invoked in a challenge to facial validity, we need only examine the
13   vagueness challenge under the facts of the particular case and decide whether, under a reasonable
14   construction of the statute or regulation, the conduct in question is prohibited."  *United States v.*
15   *Hogue*, 752 F.2d 1503, 1504 (9th Cir. 1985) (Kennedy, J.).

16   Here, the Superior Court appropriately held that section 3016(a) "is not so vague as to
17   render it void."  Resp't's Answer Ex. 1, pt. 2, at 82.  In this case, Petitioner's challenge on
18   vagueness grounds must be viewed in light of the particular facts of his case.  A person, or
19   prisoner, of ordinary intelligence would understand that "[t]he regulation clearly prohibits an
20   inmate from having alcohol under his or her control."  *Id.*  As the SHO explained, "[a]ll inmates
21   are assigned areas within their living space for storage of personal property."  *Id.* at 14.  If this
22   area is shared with another inmate, "the inmates are jointly responsible" for "any contraband
23   found within this area" with "reasonable evidence both inmates were aware of its presence."  *Id.*
24   The regulation, therefore, gives a person of ordinary intelligence adequate notice as to what type
25   of activity is prohibited.  Thus, section 3016(a) is not unconstitutionally vague as applied to
26   Petitioner.

9

## V. CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that Petitioner's application for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991). In any objections he elects to file, Petitioner may address whether a certificate of appealability should be issued in the event he elects to file an appeal from the judgment in this case. *See* Rule 11(a), Federal Rules Governing Section 2254 Cases (district court must issue or deny certificate of appealability when it enters final order adverse to applicant).

DATED: September 14, 2010.

TIMOTHY J BOMMER
UNITED STATES MAGISTRATE JUDGE